**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Michael Pennock, | No. CV-19-08191-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jason Michael Pennock's application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. After reviewing Plaintiff's Brief (Doc. 15, Pl. Br.), Defendant's Answer (Doc. 22, Def. Br.), Plaintiff's Reply (Doc. 23, Reply), and the administrative record (Doc. 11, R.), the Court affirms the decision.

**I.   BACKGROUND**

Plaintiff filed his application for SSDI benefits in December 2017, based on an onset date of July 10, 2012.[1]  (R. at 15.)  On January 9, 2019, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"). (R. at 34-55.)  On January 29, 2019, the ALJ issued a written decision finding Plaintiff not disabled. (R. at 12-33.)  The Appeals Council thereafter denied review, making the decision ripe for this Court's review.  (R. at 1-6.)

---

[1]  Plaintiff originally alleged an onset date of January 28, 2014 but amended the onset date to July 10, 2012 "following discussion with and based on the advice of his representative." (R. at 15.)  The ALJ's decision was based on the amended July 10, 2012 date. (*Id.*)

The ALJ found that Plaintiff had "severe" impairments of tinnitus and slight sensorineural hearing loss; obesity, status post left lower extremity gunshot wound; right shoulder tendonitis; headaches; post-traumatic stress disorder ("PTSD"); mild neurocognitive disorder; and depressive disorder. (R. at 18.) As for Plaintiff's residual functional capacity ("RFC"), the ALJ found that he can perform "sedentary" work with certain limitations. (R. at 20.) Specifically, Plaintiff can occasionally crawl, kneel, crouch, stoop, balance, and climb ramps or stairs; can frequently reach overhead and handle with his right upper extremity; can have occasional exposure to excessive very loud noise, excessive vibration, and dangerous machinery with moving mechanical parts; and can work with tasks that can be learned by demonstration within 30 days. (*Id.*). However, Plaintiff requires a hand-held assistive devise for uneven terrain or prolonged walking and can never climb ladders, ropes, or scaffolds. (*Id.*) After considering the testimony of a vocational expert, the ALJ concluded that, although Plaintiff could not perform any past relevant work, he could work as a "document preparer," "addresser," or "callout operator," all of which exist in significant numbers in the national economy. (R. at 26-28). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

## II.   LEGAL STANDARDS

To determine whether a claimant is disabled under the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a); *see also Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The burden of proof is on the claimant for the first four steps and shifts to the Commissioner for the fifth step. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). At step one, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.*

§ 404.1520(a)(4)(iii). If so, the claimant is disabled and the inquiry ends; if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the Commissioner has shown that claimant can perform any other work in the national economy based on the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance—it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must "consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III. ANALYSIS**

Plaintiff argues that the ALJ erred by (1) misevaluating certain medical opinions when formulating Plaintiff's RFC; and (2) improperly rejecting Plaintiff's symptom testimony. (Pl. Br. at 1, 14, 22.)

…

**A.     The ALJ Did Not Err in Rejecting Medical Opinions and Formulating Plaintiff's RFC**

When formulating Plaintiff's RFC, the ALJ discussed the medical opinions of several different sources. (R. at 24-26.) The ALJ clarified at the outset of this discussion that he would "not defer [to] or adopt any prior administrative findings or medical opinions, including those from claimant's medical sources." (*Id.* at 24.) Among the medical opinions discussed by the ALJ were the opinions of Dr. Stephen Gill, a consultative examiner, and Dr. Roger Nutt, Plaintiff's treating provider. (*Id.* at 25-26.) The ALJ declined to assign much weight to either doctor's opinion, characterizing Dr. Gill's opinion as "unpersuasive" and Dr. Nutt's opinion as "minimally persuasive." (*Id.*) Plaintiff now challenges the ALJ's rejection of these opinions on several grounds.

**1.     The Treating Physician Rule**

Plaintiff argues that the ALJ erred by failing to accord proper deference to Dr. Nutt's opinion in light of Dr. Nutt's role as a treating physician. (Pl. Br. at 14-17.) Defendant responds that, although Ninth Circuit law once required ALJs to defer to the opinions of treating physicians, such deference is no longer required because the Social Security Administration ("SSA") has promulgated new regulations, which became effective in March 2017, that "eliminate the old hierarchy of medical opinions and give no deference to any medical opinions, even those of treating doctors." (Def. Br. at 12-17.) In reply, Plaintiff argues that the new regulations are irrelevant because the "Ninth Circuit precedent" requiring deference to the opinions of treating physicians is based on *Sprague v. Bowen*, 812 F.3d 1226 (9th Cir. 1987), which was decided before the SSA promulgated its first set of regulations on this topic in 1991, and thus cannot be overruled by subsequent regulatory developments. (Reply at 6; *see also* Pl. Br. at 15 ["The 'treating physician rule' . . . existed long before the 1991 agency regulation. The Ninth Circuit's precedent was not, and never has been, dependent upon agency regulations."].)

Whether the so-called "treating physician rule"[2] remains valid in light of the 2017

---

[2]     The "treating physician rule" provides deference to opinions from treating

regulations appears to be an open question in the Ninth Circuit. Although the Commissioner identifies one recent decision in which a district court did not require deference to the opinion of a treating physician in light of the 2017 regulations, *see Ryan L.F. v. Comm'r of Soc. Sec.*, 2019 WL 6468560 (D. Or. 2019), it doesn't appear that the plaintiff in that case raised the same challenges that Plaintiff seeks to raise here concerning those regulations' validity. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted).

Having carefully considered the parties' arguments, the Court concludes that Defendant's position is correct. In *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993), the Second Circuit confronted essentially the same issue. During 1970s and 1980s, a period in which there were "no comprehensive administrative regulations concerning the" weight to be afforded to the opinions of treating physicians, the Second Circuit chose to create a "judge-made treating physician rule" that required such opinions to be afforded a certain degree of deference. *Id.* at 565-67. Later, in 1991, the Department of Health and Human Services promulgated new regulations that "set forth comprehensive guidelines . . . for evaluating the medical opinions of treating physicians in disability benefit claims proceedings." *Id.* at 566. Critically, these new regulations "differ[ed] from [the Second Circuit's] version of the treating physician rule in material respects." *Id.* In *Schisler*, the Second Circuit addressed whether the new regulations could effectively overrule its earlier "judge-made" precedent on this issue. Although some district courts had concluded (just as Plaintiff argues here) that the judge-made precedent "maintained its overriding and

---

physicians because they "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, [and so] their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The rule also requires an ALJ to provide specific and legitimate reasons, based on substantial evidence, to reject a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831-33 & n.8 (9th Cir. 1996).

- 5 -

paramount status and effect" (*id.*), the Second Circuit disagreed and held that the new regulations were "binding" on district courts in Social Security appeals:

> The Secretary has the statutory authority to promulgate regulations concerning the weighing of evidence, including the weight to be given to opinions of treating physicians, in adjudicating claims under HHS's benefits scheme. Although the new regulations depart in various ways from this circuit's version of the rule, they are neither arbitrary, capricious, nor contrary to the statute. They are thus valid. Because they are valid, they are binding on the courts.

*Id.* at 564-65.

The Court finds this analysis compelling, and Plaintiff has not identified any reason to believe the Ninth Circuit would reach a different conclusion if presented with the same issue.[3] Accordingly, Plaintiff is not entitled to reversal based on his argument that the ALJ applied the wrong legal standard when evaluating the opinion of his treating physician.

### 2.     Opinion of Stephen Gill, Ph.D.

On February 28, 2018, Stephen Gill, Ph.D. performed a consultative examination of Plaintiff. (R. at 1635-40.) Dr. Gill noted that Plaintiff's mood was depressed and anxious and diagnosed Plaintiff with severe PTSD and depressive disorder with sleep disturbance. (R. at 1638-39.) Dr. Gill opined that Plaintiff would likely have significant limitations in "understanding and remembering simple and detailed instructions given by an employer;" "carrying out simple and detailed instructions, maintain[ing] attention and concentration over time and completing a normal workweek," "interacting with the general public and with peers and supervisors in a work setting given his [PTSD]," and "responding to changes in the work setting and shifting from tasks to tasks in a work environment." (R. at 1640.)

---

[3]    Although Plaintiff identifies *Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987), as the decision in which the Ninth Circuit adopted the treating physician rule, *Sprague* suggests the rule was actually adopted in *Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983). And in *Murray*, the Ninth Circuit explained that it was adopting this rule in part because it "agree[d]" with the decisions of the Second, Fifth, and Sixth Circuits "in giving greater weight to the opinions of treating physicians." *Id.* at 501-02. Because the Ninth Circuit's "judge-made" rule concerning treating physicians has its roots in Second Circuit law, this provides even more reason to believe the Ninth Circuit would agree with *Schisler*'s determination that such judge-made law may be overruled by subsequent regulatory developments.

The ALJ concluded that Dr. Gill's opinion was "unpersuasive" because (1) Dr. Gill's opined limitations were "extreme" in light of Plaintiff's self-reported daily activities; (2) Dr. Gill's examination was "fairly benign," so his opinions must have been "heavily" dependent on Plaintiff's subjective complaints; and (3) Dr. Gill "was not able to review the claimant's medical records in their entirety which do not support [the opined] restrictions and do not corroborate [Plaintiff's] allegations to the extent reported." (*Id.*)

The ALJ did not commit reversible error by rejecting Dr. Gill's opinion for these reasons. During his examination of Plaintiff, Dr. Gill noted that Plaintiff was taking a "full load" of college courses, with plans to graduate in 2018, and that Plaintiff's "average day" involved waking up at 6:00 am, going to school, and taking classes and/or studying in the library until 5:00 pm. (R. at 1637.) Dr. Gill also noted that Plaintiff had adequate social skills, intact mental status, a Folstein Mental Status Exam score (which assesses Plaintiff's memory and cognitive functions) in the "normal" range, and adequate insight and judgment. (R. at 1638-39.) These findings are inconsistent with the extreme limitations to which Dr. Gill opined. It was permissible for the ALJ identify this discrepancy as a reason for rejecting Dr. Gill's opinion. *See, e.g., Frost v. Berryhill*, 727 Fed. Appx. 291, 294 (9th Cir. 2018) (ALJ appropriately rejected physician opinion based on one examination, incomplete medical record review, and claimant's own self-reported symptoms when claimant's ability to go to public places undermined physician's opinion that claimant "would have difficulty interacting with coworkers and the public"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ appropriately rejected physician opinion when restrictions set forth by physician "appear[ed] to be inconsistent with the level of activity that [the claimant] engaged in"); *McHugh v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4035168, *2-3 (D. Ariz. 2020) (ALJ appropriately rejected physician opinion that claimant "could only engage in simple work-like procedures" where claimant was successfully pursuing a college degree).

### 3.   Opinion of Roger Nutt, M.D.

Roger Nutt, M.D. served as Plaintiff's treating provider. Dr. Nutt provided a

medical assessment of Plaintiff's ability to do work-related activities (R. at 1685-87), a headache questionnaire (R. at 1688), and a statement of disability (R. at 1705). In the headache questionnaire, Dr. Nutt indicated that Plaintiff has 12-16 headaches per month, for up to 8 hours each, and that these headaches cause Plaintiff to suffer from nausea, vomiting, and photophobia and interfere with Plaintiff's concentration, memory, attention, sleep, and ability to work at a persistent pace. (R. at 1688.) Dr. Nutt opined that, as a result of the headaches, Plaintiff would be absent from any employment 16 times per month. (*Id.*) In the medical assessment, Dr. Nutt opined that Plaintiff could sit for six hours, stand/walk for three hours, occasionally lift up to ten pounds, frequently lift up to five pounds, and frequently use his upper extremities. (R. at 1685-87.) Finally, in the statement of disability, Dr. Nutt opined that Plaintiff "has severe limitations in physical, visual, and cognitive abilities that prohibit him from performing the normal tasks of an otherwise capable employee." (R. at 1705.)

The ALJ concluded that Dr. Nutt's opinion was "minimally persuasive" because (1) "the examination conducted on the same day as [Dr. Nutt] completed the questionnaires was unremarkable aside from his note of an antalgic gait"; (2) Dr. Nutt's opinions were "based on the claimant's subjective complaints rather than the doctor's examination findings, as the doctor essentially indicated word for word what the claimant reported"; (3) Plaintiff had provided conflicting reports to other doctors, by reporting lesser headache symptoms, rejecting headache-related medication, and "consistently den[ying] throughout the longitudinal medical report having any nausea or vomiting due to headaches"; (4) Plaintiff's subjective reports to Dr. Nutt were also contradicted by Plaintiff's daily activities, including attending school and driving out of state; and (5) Dr. Nutt provided "no support" for the opinion that Plaintiff would miss 16 days of work each month. (R. at 25-26.)

The ALJ did not commit reversible error by rejecting Dr. Nutt's opinion for these reasons. In particular, it was permissible for the ALJ to focus on the lack of consistency and supportability of Dr. Nutt's opinion with the Dr. Nutt's own examination notes and the

entire medical record. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("The ALJ rejected Dr. Tobin's statement that Bayliss could stand or walk for only fifteen minutes at a time. Dr. Tobin took clinical notes on the same day that he made this statement. These notes, and the doctor's other recorded observations and opinions regarding Bayliss's capabilities, contradict Dr. Tobin's statement assessing Bayliss's ability to stand or walk. Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding Bayliss's limited ability to stand and walk."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004) (court properly discounted treating doctors' opinions that were not supported by objective evidence and were based on claimant's subjective testimony).

Additionally, there was substantial evidence supporting the ALJ's finding of such inconsistency. For example, on the day of Dr. Nutt's examination, Plaintiff denied headaches, memory loss, anxiety, depression, and mood swings and did not report photophobia, nausea, or vomiting. (R. at 1648.) When meeting with other doctors, Plaintiff made similar statements that were inconsistent with Dr. Nutt's opinions. (*See, e.g.,* R. at 547 ["[H]e reports that he's having HA [headaches] at least 2/month . . . . He endorses photophobia, but no phonophobia, nausea, vomiting. . . . He has not used any Imitrex SQ yet."], 883 ["He states that he hasn't used an Imitrex SQ in a while, stating that he doesn't feel the HA [headaches] were 'bad enough' to warrant that."], 1115 ["no nausea or vomiting"], 1636 ["The claimant is prescribed pain medications, but he said he does not take them except on rare occasions because he is afraid of their addictive potential."])

### B. The ALJ Did Not Err in Rejecting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed reversible error by rejecting his symptom testimony. (Pl. Br. 1, 22.) Plaintiff alleges that the ALJ used boilerplate language regarding the severity of his reported symptoms, which failed to connect the medical evidence to a finding that any specific part of his testimony lacked credibility. (Pl. Br. at 23-24.) Plaintiff further argues that this error cannot be considered harmless, because the vocational expert testified that his reported symptoms would interfere with his ability to

perform any sustained work, and that this error alone means the Court should remand for calculation of benefits without further hearings. (R. at 25-26.) Defendant responds that the ALJ provided legally sufficient reasons for finding that Plaintiff's pain testimony was inconsistent with the objective medical evidence and with "other evidence" in the record, such as Plaintiff's reported activity levels. (Def. Br. 26.)

The Court agrees with Defendant. Plaintiff testified that he has difficulty performing numerous daily living activities and is unable to work due to physical impairments, mental conditions, and migraine headaches. (R. at 38-48.) As for physical impairments, Plaintiff testified that due to a gunshot injury to his left hip, he is unable to walk more than half a mile; he is unable to sit for more than 10 to 20 minutes; he has trouble reaching and using his left hand; and he has right shoulder pain due to cane usage. (*Id.*) As for mental conditions, Plaintiff testified that he has difficulty sustaining concentration and easily loses focus; he has panic attacks in groups of 20 or more people; he is irritable, easy to anger, and snaps easily; he has difficulty sleeping due to anxiety, pain, and nightmares; and he does not interact with "stupid" people (like those he might come in contact with in a retail job) very well and does not interact with other students in class during school. (*Id.*) He explained that due to his panic attacks, he is not able to drive for fear that he may "freak out." (*Id.*) He further testified that he has severe migraine headaches, which can last for two to three days, and light sensitivity that can cause migraines after thirty minutes from things like computer screens. (*Id.*)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1529(c). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an underlying medically determinable physical or mental impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1529(c)(1). If so, the ALJ must then evaluate the

statements in context of the (1) objective medical evidence and (2) other evidence[4] in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3). The ALJ may "reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so," *Smolen*, 80 F.3d at 1281, and not "merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also* 20 C.F.R. § 404.1529(c)(2). This requirement is meant to prevent an ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony. *Thomas*, 278 F.3d at 958.

Here, the ALJ found that the first step was satisfied, because Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms." (R. at 26.) When evaluating the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ further explained that "the limitations alleged by the claimant that find support within the totality of the evidence of record have been accommodated by the above residual functional capacity finding." (*Id.*) Specifically, the ALJ highlighted Plaintiff's record of physical activity; independent travel to Missouri; social activities at school and group therapy; objective medical evidence showing Plaintiff's ability to recall information despite his claims of memory issues; Plaintiff's testimony of his ability to manage memory issues including calendars, notes, and alarms; and normal results on brain MRI, CT, and EEG tests. (R. at 22-23.) Plaintiff also denied the need to take migraine medication (R. at 883), told physicians that he had stopped attending therapy (R. at 1635), and stated that he

---

[4] The ALJ considers non-objective factors—as reported by the plaintiff and medical or nonmedical sources—relevant in assessing a plaintiff's reported symptoms, including: the plaintiff's daily activities; the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the plaintiff's takes or has taken to alleviate his or her pain or other symptoms; treatment apart from medication that the plaintiff receives or has received for relief from pain or other symptoms; any measures that the plaintiff uses or has used to relieve his or her pain or other symptoms (e.g., standing for a period every hour or lying flat); and other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

does not take his prescribed pain medications due to fear of addiction (R. at 1636). All of these factors were appropriately considered by the ALJ. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can be used to discount pain testimony); *Tommasetti*, 533 F.3d at 1039 (the ALJ permissibly "inferred that [plaintiff's] pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication"); *Javalera v. Saul*, 806 Fed.Appx. 516, 518 (9th Cir. 2020) (ALJ appropriately discounted pain testimony where the medical record showed "unremarkable findings" that did not substantiate [plaintiff's] claims of disabling pain).

"Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the court's] role is not to second-guess that decision." *Fair*, 885 F.2d at 604 (citation omitted). Here, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record as a whole for discounting Plaintiff's subjective pain testimony. Thus, the Court finds no reversible error.

Accordingly,

**IT IS ORDERED** affirming the January 29, 2019 decision of the Administrative Law Judge (R. at 12-33), as upheld by the Appeals Council (R. at 1-6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of November, 2020.

Dominic W. Lanza
United States District Judge